IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| MARY CHRISTINA HERNANDEZ, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| vs. | § | 5-20-CV-00389-RBF |
| | § | |
| KILOLO KIJAKAZI, ACTING | § | |
| COMMISSIONER OF THE SOCIAL | § | |
| SECURITY ADMINISTRATION[1]; | § | |
| | § | |
| *Defendant*. | § | |

**ORDER**

This Order concerns Plaintiff Mary Christina Hernandez's request for judicial review of the administrative denial of her application for disability-insurance benefits under Title II of the Social Security Act. This action was assigned for disposition pursuant to the parties' consent to U.S. Magistrate jurisdiction. See Dkt. Nos. 5, 10 & 13. This Court has jurisdiction to review a final decision of the Social Security Administration. *See* 42 U.S.C. § § 405(g). On June 17, 2021, the Court held a hearing at which Plaintiff Hernandez and Defendant, the Commissioner of the Social Security Administration, appeared through counsel of record.

After considering the parties' briefing, their arguments at the June 17 hearing, the record of the administrative proceeding, and the applicable authority, the Court will **REVERSE** the Commissioner's decision and **REMAND** this matter pursuant to sentence four of 42 U.S.C. § 405(g).

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court substitutes Kilolo Kijakazi—the current Acting Commissioner of the Social Security Administration—for the named Defendant Andrew Saul.

### Factual and Procedural Background

Plaintiff Hernandez protectively filed her application for disability-insurance benefits, according to the Administrative Law Judge (ALJ), on June 15, 2017,[2] alleging a disability onset date of April 17, 2017. Tr. at 45. She alleged disability due to chronic pancreatitis, pancreatectomy, diabetes, high blood pressure, and nausea. *Id*. 69-70. Hernandez's claims were initially denied, *id*. 69-79, and again denied following her request for reconsideration, *id*. 80-92. Hernandez then requested an administrative hearing, which the Commissioner noticed for December 6, 2018. *See id.* 106-21; 153.

On November 21, 2018—about two weeks before the scheduled hearing—Hernandez's representative advised the ALJ via a letter that despite his best efforts he was unable to secure relevant records from Hernandez's current primary-care provider, Dr. David Lopez, who had been treating Hernandez since July 1, 2016. *See id.* 251. Without these records, Hernandez's representative explained, a full evaluation of Hernandez's impairments "will not be possible." *Id.* Accordingly, Hernandez's representative in that correspondence requested an additional 30 days to provide the records, or, alternatively, that a subpoena be issued for the records pursuant to 20 C.F.R. § 405.332. *See id.*

Hernandez's request for additional time or a subpoena for Dr. Lopez's records apparently went unanswered. The record reflects that the hearing commenced as scheduled about two weeks later, on December 6, 2018. Hernandez and her attorney attended. *See id.* 41-68. And at the, Hernandez's attorney didn't reference the missing records. To the contrary, counsel represented that the record was complete. *See id.* 45 (ALJ: "Know of anything relevant or related we don't

---

[2] Hernandez's Application for Disability Insurance Benefits, *id*. 164-65, states that she completed her application on June 19, 2017. This discrepancy is not material here.

have yet?" Atty: "No. I believe the record is complete, Your Honor."). Nor did the ALJ delve into the matter further, notwithstanding Hernandez's November 21, 2018, correspondence.

On March 29, 2019, the ALJ denied Hernandez's claim for disability benefits. *See id.* 18-28. In his analysis, the ALJ first found that Hernandez met the insured-status requirements of the Social Security Act. He then applied the five-step sequential analysis required by the regulations. *See id.* At step one of the analysis, the ALJ found Hernandez had not engaged in substantial gainful activity since the alleged disability onset date of April 17, 2017. *Id.* 20. At step two, the ALJ found Hernandez has the following severe impairments: pancreatitis, diabetes mellitus, gastrointestinal pain, and fibromyalgia. *Id.* At step three, the ALJ found that none of Hernandez's impairments met or medically equaled the impairments of one of the listed impairments in the applicable Social Security regulations. *Id.* 20-23.

Before reaching step four of the analysis, the ALJ found that Hernandez has a physical residual functional capacity to perform the full range of light work as defined by 20 C.F.R. § 404.1567(b) except that she must work in a "relatively clean work environment with low level of pollutants," be subject to "stable temperatures," not be exposed to "dust, or fumes," perform "indoor work only," and only "occasionally (a third of an 9-hour day) balance, stoop, kneel crouch; and no crawling or climbing." *Id.* 23. The ALJ didn't assess any mental functional limitations. In making this residual functional capacity assessment, the ALJ found Dr. Lopez's opinions, *see id.* 1026-32, unpersuasive, concluding that they were "largely unsupported by a review of the claimant's medical records and an examination of the claimant." *Id.* 27. Specifically, the ALJ explained that Dr. Lopez's opinion that Hernandez had marked limitations in all areas of the b-criterion and is limited to the sedentary exertional level with additional manipulative limitations was unsupported by physical examinations of Hernandez and clashed with consistently normal imaging findings, Hernandez's reported activities of daily living, and

the "longitudinal evidence of record including, for example, [Hernandez's] psychological consultative examination." *Id.* Relying on this same "longitudinal" medical evidence, *i.e.*, one report from the psychological consultative examiner and Hernandez's emergency room records, ALJ also largely rejected the other medical opinions of record. *See id.* 26-27.

At step four, after considering the residual functional capacity and the testimony of the vocational expert, the ALJ determined that Hernandez was able to perform her past relevant work as a billing and collections clerk. *See id.* 27. The ALJ didn't make an alternative step-five finding. *See id.*  Accordingly, the ALJ determined that Hernandez was not disabled for purposes of the Act, and therefore was not entitled to receive benefits. *Id.*

The Appeals Council denied Hernandez's subsequent request for review of the ALJ's finding. *Id.* 1-6. Accordingly, on March 26, 2020, after exhausting all available administrative remedies, Hernandez filed for judicial review. Dkt. No. 1.

## Analysis

At issue is whether reversible error occurred in connection with ALJ's assessment of Hernandez's mental and physical residual functional capacity. Under the circumstances presented here, the ALJ's explanation for rejecting Dr. Lopez's opinion doesn't jibe with the record or the ALJ's failure to subpoena or otherwise obtain Dr. Lopez's treating records. This is especially troubling because the ALJ recognized that Hernandez's fibromyalgia is a severe impairment but there was apparently no, or very little, medical information regarding the fibromyalgia for the ALJ to have considered. This was error, and this error was not harmless under these circumstances. Remand is therefore required.

### A.    The Record Lacks Any Treating Records from Dr. Lopez.

The longitudinal medical evidence before the ALJ consisted of (1) emergency room records for Hernandez after she complained of abdominal pain and nausea; (2) a handful of

progress notes from Hernandez's gastroenterologist; (3) a report from the psychological consultative examiner; and (4) opinions from the state-agency consultants. But not included in the record were *any* treatment notes from Dr. Lopez—Hernandez's primary-care provider who treated Hernandez since July 1, 2016, for chronic depression and anxiety, fibromyalgia, and chronic-pain syndrome. No provider other than Dr. Lopez treated Hernandez for depression, anxiety, or fibromyalgia. Notably, the ALJ concluded that Hernandez has severe impairments resulting from pancreatitis, diabetes mellitus, gastrointestinal pain, and the aforementioned fibromyalgia.

Each side faults the other for the absence of Dr. Lopez's treating records. Hernandez invokes the principle that "[t]he ALJ owes a duty to a claimant to develop the record fully and fairly to ensure that his decision is an informed decision based on sufficient facts." *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996). In other words, "[t]he function of the ALJ is to not merely to sit and listen, nor is he [or she] appointed to process cases on an administrative assembly line." *Kane v. Heckler*, 731 F.2d 1216, 1219 (5th Cir. 1984). And Hernandez urges that when an ALJ "fails in that duty, [the ALJ] does not have . . . sufficient facts on which to make an informed decision. Consequently," says Hernandez's argument, "[the] decision is not supported by substantial evidence." *Id.*; *see also Sun v. Colvin*, 793 F.3d 502, 509 (5th Cir. 2015). The Commissioner, in response, notes that typically the duty to obtain medical records lies with the claimant. *See Gonzalez v. Barnhart*, 51 Fed. App'x 484 (5th Cir. 2002). And where a claimant doesn't provide sufficient evidence, the ALJ must make a decision based on the available evidence. *Winston ex rel. D.F. v. Astrue*, 341 Fed. App'x 995, 997 (5th Cir. 2009).

The record reflects the ALJ had reason to know leading up to the hearing that treatment records from Dr. Lopez were missing. Hernandez notified the ALJ two weeks before the administrative hearing that she hadn't been able to obtain the records. *See* Tr. 251. Hernandez

asked for additional time to obtain the records or, alternatively, that the ALJ issue a subpoena for them. Moreover, the record reflects several unsuccessful attempts by the agency to obtain the records from Dr. Lopez before the administrative hearing. *See, e.g.*, Tr. 33, 36, 37. Despite this evidence, the ALJ didn't take any additional steps to ensure the records were received, let alone mention their absence in his written order.[3]

The ALJ also had reason to know that Dr. Lopez's missing treatment records, if they could be obtained, would inform a decision on the persuasiveness of Dr. Lopez's opinion. Such records would speak to the supportability and consistency of that opinion, which are the most important factors the Commissioner considers when determining the persuasiveness of a medical source's opinion. *See* 20 CFR § 416.920c(a).

Although the record looks incomplete and the ALJ appears to have been on notice of that fact, the mere absence of these records alone is not sufficient to warrant reversal and remand under the circumstances presented. Specifically, the Court is troubled by the affirmative representation by Hernandez's counsel at the administrative hearing that the record was complete. "Although the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record—indeed, to exhort the ALJ that the case is ready for decision—and later fault the ALJ for not performing a more exhaustive investigation." *Maes*

---

[3] *See, e.g.*, *Thorton v. Schweiker*, 663 F.2d 1312, 1316 (5th Cir. 1981) ("[O]nce the Social Security Administration received Thornton's letters requesting assistance in obtaining specific medical and psychological records, the administrative process should not have proceeded to a final decision without either some assurance from Thornton that she no longer sought to present the records, or notice from the Social Security Administration that it would not obtain the records and that Thornton would have ample time to acquire the records herself and file them with the ALJ for consideration."); *Harris v. Massanari*, No. CIV. A. 00-3105, 2002 WL 10466, at *3 (E.D. La. Jan. 3, 2002), *opinion clarified on denial of reconsideration sub nom*., 2002 WL 1066747 (E.D. La. May 28, 2002) (ALJ failed to fully and fairly develop the record by not subpoenaing the records of plaintiff's treating physician where counsel advised the ALJ that he was unsuccessful in obtaining the records).

*v. Astrue*, 522 F.3d 1093, 1097 (10th Cir. 2008). But the analysis doesn't end with the incomplete record and the parties' competing arguments for who's to blame.

### B. The ALJ's Explanation for Rejecting Dr. Lopez's Opinion Reflects an Insufficiently Informed Residual-Functional-Capacity Decision.

It is the ALJ's duty to explain his or her conclusions, and the Court must hold the ALJ to the justifications and explanations the ALJ has offered. *See Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."). And, as noted, the ALJ's decision must be sufficiently informed by record evidence. *See Kane*, 731 F.2d at 1219 (noting ALJ must have before him or her sufficient facts to make an informed decision); *Sun*, 793 F.3d at 509 (noting ALJ's duty to develop "all relevant facts"). What merits remand here is the sparse, incomplete record coupled with ALJ's failure to provide an adequate explanation for rejecting Dr. Lopez's opinion while forging ahead with a residual-functional-capacity determination based on insufficient information. *See Sun*, 793 F.3d at 509 (where an ALJ fails to fully and fairly develop the record, "he does not have before him sufficient facts on which to make an informed decision and consequently the decision is not supported by substantial evidence") (quotations omitted); *cf. Hernandez v. Astrue*, 269 Fed. App'x 511, 515 (5th Cir. 2008) (ALJ need not further develop the record and may proceed to a decision if there is sufficient information in the record to support a reasonably informed decision).

In rejecting Dr. Lopez's opinion, as well as almost every medical and psychological opinion of record, the ALJ focused on those opinions' inconsistency with the "longitudinal evidence of record." The ALJ also cited select notes from emergency-room physical examinations in which Hernandez reported normal mood and effect. *See* Tr. 26-27. Notably, were this a case in which the ALJ reviewed a plethora of other treatment records—other than the

missing Dr. Lopez records—the outcome would likely be different, so long as those other records informed and supported the ultimate decision on functional limitations for each medically determinable impairment. *Cf. Sun*, 793 F.3d at 509 (ALJ has a duty to develop "all relevant facts," "not collect[] all existing records").

But here the longitudinal record relied on by the ALJ is scant—at best. As mentioned, no provider other than Dr. Lopez treated Hernandez for depression, anxiety, or fibromyalgia. Consequently, the Court discerns no significant *inconsistency* between the longitudinal record and Dr. Lopez's conclusions regarding, for example, the effect of Hernandez's fibromyalgia on her ability to work. Yet that supposed inconsistency was the ALJ's stated reason for rejecting Dr. Lopez's conclusions. Indeed, the Court is unable to identify any significant piece of evidence— let alone longitudinal evidence of record—connected to Hernandez's fibromyalgia that could have reasonably informed the ALJ's decisions to reject Dr. Lopez's opinion and formulate a residual functional-capacity-assessment that purports to address her severe fibromyalgia. *See Hernandez*, 269 F. App'x at 515.[4] There is instead no record at all respecting the fibromyalgia and only minimal records respecting Hernandez's mental health. Accordingly, under these circumstances, the ALJ should've known that Dr. Lopez's missing treatment records were essential to making an informed decision and, hence, the ALJ should've taken steps to secure them.[5]

---

[4] *See also Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("An ALJ's duty to develop the record further is triggered . . . when the record is inadequate to allow for proper evaluation of the evidence.")

[5] *See* 20 C.F.R. § 404.950(d) (permitting an ALJ to issue a subpoena "on his or her own initiative or at the request of a party" "[w]hen it is reasonably necessary for the full presentation of a case"); *Kennedy v. Comm'r of Soc. Sec.*, No. 17-CV-908-FPG, 2019 WL 988889, at *3 (W.D.N.Y. Mar. 1, 2019) (ALJ erred in failing to subpoena records where the ALJ was on notice that hundreds of pages of medical records were missing from plaintiff's medical file); *Cf. Maes*, 522 F.3d at 1097 (refusing to reverse for failure to develop the record where claimant's counsel

Notably, had the ALJ faulted Hernandez for forfeiting further development of the record at the hearing and failing to provide records to support her fibromyalgia complaints and Dr. Lopez's fibromyalgia opinion, the outcome here might perhaps be different. The burden to demonstrate a disability is always on the claimant. Accordingly, at some point, an ALJ must render a decision based on the available evidence. *See Winston ex rel. D.F.*, 341 Fed. App'x at 997. But what an ALJ says is important, and the Court "may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astru*e, 482 F.3d 1205, 1207-08 (10th Cir. 2007). The ALJ's invocation of an inconsistency between the scant longitudinal record and Dr. Lopez's opinion doesn't pass muster; it reflects an oversight and indicates that the residual-functional-capacity assessment was not the result of reasonably informed decision-making.

### C.    The Error Prejudiced Hernandez.

To obtain remand, Hernandez must show prejudice resulting from the ALJ's error. Hernandez's ability to show prejudice is somewhat hampered by the fact that she never acquired the records in dispute. Accordingly, Hernandez can only presume that Dr. Lopez's underlying treatment records would've supported his opinion that Hernandez was more functionally limited than the ALJ assessed. Generally, "[m]ere speculation that additional evidence might have made a difference does not suffice [to demonstrate prejudice warranting reversal]." *Cleveland v. Saul*, No. 19-CV-0389, 2020 WL 609689, at *8 (W.D. La. Jan. 23, 2020), *report and recommendation adopted*, 2020 WL 609639 (W.D. La. Feb. 7, 2020).

But under the circumstances presented here, where the ALJ's decision wasn't reasonably informed and instead relied on cherry-picked evidence taken from an underdeveloped,

---

affirmatively represented that the record was complete and the missing medical records weren't obvious from the administrative record or otherwise brought to the ALJ's attention).

incomplete record; it is more than conceivable that the ALJ could have reached a different determination at step four had he fully and fairly developed the record by subpoenaing Dr. Lopez's treatment records. *See Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000) ("[I]t is clear that the ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his[or her] position."); *Harris*, 2002 WL 10466, at *3-4 (ALJ's failure to subpoena records from plaintiff's treating physician meant the ALJ didn't have before him sufficient facts on which to make an informed decision and remand was warranted). Accordingly, Hernandez has sufficiently demonstrated prejudice to warrant reversal on this record.

## Conclusion

For the reasons discussed above, remand is appropriate. The ALJ shall subpoena Dr. Lopez's treatment records and then fully develop his findings regarding the proper weight to afford to all medical opinions of record. If necessary, the ALJ shall hold another hearing and obtain new vocational expert testimony.

The Commissioner's decision that Hernandez is not disabled is **REVERSED,** pursuant to sentence four of 42 U.S.C. § 405(g), and this case is **REMANDED** to the Commissioner for further consideration consistent with the instructions provided herein.

**IT IS SO ORDERED**.

SIGNED this 19th day of July, 2021.

RICHARD B. FARRER
UNITED STATES MAGISTRATE JUDGE